# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**BRANDON H. QUEEN,**

    **Plaintiff,**

    v.

    Case No. 2:16-cv-1082
    **JUDGE JAMES L. GRAHAM**
    **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Brandon H. Queen, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12) ("SOE"), the Commissioner's Memorandum in Opposition (ECF No. 18) ("Opposition"), Plaintiff's Reply (ECF No. 19) ("Reply"), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## I. BACKGROUND

At the age of fifteen, Plaintiff began receiving SSI based on his disability. (R. at 34, 97.) When he reached the age of eighteen, the Social Security Administration conducted a disability redetermination and concluded that Plaintiff did not meet the disability standard for adults. (R. at 81, 92–127.) Plaintiff appealed that decision and a hearing was held on November 21, 2013.

(R. at 119.) On December 19, 2013, the decision to cease Plaintiff's benefits was affirmed. (R. at 126–27.) Plaintiff requested a hearing before an administrative law judge. (R. at 130–37.) Administrative Law Judge Nino A. Sferrella ("ALJ") held a hearing on July 14, 2015, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 54–91.) On August 11, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 34–47.) On September 15, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–7.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY[1]

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that he was born on July 28, 1994, and was twenty years old at the time of the hearing. (R. at 60.) Plaintiff lives with his mother and younger brother. (R. at 59–60.) Plaintiff was born with a heart defect that was corrected soon after birth and suffers from abnormalities in both feet. (R. at 61.) Plaintiff also has a learning disability. (R. at 61, 66.) While attending high school, Plaintiff took some "special classes" and graduated in 2013. (R. at 60.) Plaintiff specifically testified that he had difficulty in math and English, but did not believe that those difficulties limited his ability to work:

> Q: There was a question about a learning disability. How do you feel that that might—and do you agree that maybe math was one of the learning disabilities you had in school? Is that the most difficult subject you had?
>
> A: Yeah, I had trouble with both math and English.
>
> Q: So do you think those are factors in either reducing your ability for work that is the learning factors, or math, or reading?

---

[1] The Undersigned limits the analysis of the evidence and the administrative decision to the issues raised in the SOE, *i.e.*, that the mental residual functional capacity is not supported by substantial evidence.

A: I don't think so.

(R. at 66.)

Right after he graduated from high school, Plaintiff started at Columbus State and is in a two-year "adapted program" for students with certain kinds of handicaps, studying to become a chef. (R. at 70–71, 74.) While he is starting his second year, he is not close to graduating because he is taking his time in the program. (R. at 71.) Once he completes the program, he will receive certification. (*Id.*) Plaintiff described the accommodations he receives at Columbus State, including elevators and a calculator for math. (R. at 73.) Plaintiff also has special testing conditions in a quiet place that include headphones with recorded questions. (*Id.*)

Plaintiff testified that the only paying job he has held was a part-time position (one to two hours a day) in the high school cafeteria cleaning tables and washing dishes from 2010 until he graduated in 2013. (R. at 60–61.) Plaintiff denied working well with computers, testifying that computers are "like gibberish, like alien to me or like an alien language or something." (R. at 72.)

Plaintiff is not taking any medication of any kind. (R. at 67.) Other than the learning disability he described, he denied having any other kind of mental symptoms. (*Id.*) Plaintiff testified that he does not let his conditions "control" him "at all." (R. at 69.) When he is not in school, Plaintiff practices martial arts twice a week. (R. at 69–70.)

**B.  Vocational Expert Testimony**

John Finch testified as a vocational expert ("VE") at the July 14, 2015, administrative hearing. (R. at 78–89.) The ALJ proposed a hypothetical that presumed an individual with Plaintiff's age, his ankle problems, high school education, and no work experience, capable of performing sedentary work. (R. at 78.) The VE testified that the hypothetical individual could

perform work as a sorter, order clerk, inspector, all of which were sedentary, unskilled positions and all of which were available nationally and in the east central Ohio region. (R. at 78–79.) The VE testified that these positions are simple jobs with simple tasks. (R. at 79.) The ALJ next asked the VE to presume the same individual as before with the following limitations: must have a clean air environment, no bilateral foot controls, occasional ramps, stairs, with no kneeling, crawling, or climbing ladders. (R. at 79–80.) The VE testified these limitations would not impact the hypothetical individual's ability to perform the sedentary work previously identified. (R. at 80.) The ALJ asked the VE to presume the same hypothetical individual with those limitations in addition to limitations of no work involving heights, no work involving moving or hazardous machinery, and no extreme temperatures. (*Id.*) The VE testified that these limitations would not impact the hypothetical individual's ability to perform the same sedentary jobs. (*Id.*) Plaintiff's other mental limitations would not affect his ability to perform these sedentary jobs:

> ALJ: [Dr. Dory Sisson's] conclusions are, his [Plaintiff's] weaknesses are learning disorder NOS [not otherwise specified], it doesn't say why, and moderately impaired attention, working, and memory, moderate so he doesn't give a definition there either. He would be able to complete basic reading tasks at a functional level based upon mild impairment in sight, reading, reading comprehension. Does that fit into the jobs you mentioned?
>
> VE: Yes.

(R. at 82–83.)

> ALJ: I'm still looking, yeah, at [Exhibit] 8F, and I'm looking at these 13 areas that he's [Dr. Sisson] assessing, she's assessing. Moderate skills in math, he [Plaintiff] cannot be expected independently to complete more than very basic math calculations, accommodations should include use of a calculator, formally conversion table. Would that apply to any of the jobs—
>
> VE: It wouldn't affect those jobs, your honor.

(R. 83.)

Both the VE and the medical expert, Jonathan Nesbaum ("ME"), agreed that Plaintiff's

4

Global Assessment of Functioning ("GAF") score of 65 is a "workable" score. (R. at 84.)

### III. MEDICAL RECORDS

#### A. Dory Sisson, Ph.D.

At the request of the Ohio Bureau of Vocational Rehabilitation ("BVR"), Dory Sisson, Ph.D., a psychologist, personally examined Plaintiff on April 15, 2013. (R. at 526–35.) Dr. Sisson noted that Plaintiff generally denied any current psychological/psychiatric complaints and denied having ever been diagnosed with, or experiencing "significant symptoms" from, attention deficit hyperactivity disorder, depression, anxiety, or bipolar disorder. (R. at 527.) Plaintiff denied having crying spells, homicidal ideation, suicidal ideation, or any past suicide attempts. (*Id*.) Plaintiff also denied explosive outbursts. (*Id*.) He reported yelling and anger towards his brother, but Plaintiff is able to calm himself and denied hitting his brother. (*Id*.) When questioned about anxiety symptoms, Plaintiff reported that he felt nervous about competitive basketball, but denied excessive worry, panic attacks, or any other nervousness or anxiety. (*Id*.) Plaintiff denied any past medication for psychological or psychiatric conditions or issues and denied any history of family mental illness. (R. at 528.) Dr. Sisson noted that Plaintiff was not currently receiving psychological or psychiatric treatment. (*Id*.)

As to Plaintiff's educational history, Dr. Sisson noted that Plaintiff, presently a senior in high school, has an Individualized Education Program ("IEP"). (*Id*.) When asked about learning disabilities are addressed by his IEP, Plaintiff reported the following: "I don't know what LD [learning disability]. When the teacher says something, I can't learn it." (*Id*.) Plaintiff reported that he has a "big anger problem," but he can control it. (*Id*.) Plaintiff denied any behavioral difficulties at school, such as detentions. (R. at 528–29.)

Plaintiff reported that he worked paying job during lunch at his high school. (R. at 529.) He denied having any problems at work and denied interpersonal difficulties, stating that he gets along with people. (*Id*.) When asked about psychological or emotional difficulties at work, Plaintiff stated, "No, I have good control of my anger." (*Id*.) When asked about any cognitive difficulties he has or would have at work, Plaintiff responded that "I wouldn't be able to read or write at a job." (*Id*.) Plaintiff reported that he could keep a job and that the only thing he needs help with is driving. (R. at 533.)

Plaintiff reported that he eats breakfast and watches television before going to school. (R. at 529.) After returning from school, he relaxes and watches television. (*Id*.) Plaintiff socializes with friends and relatives. (*Id*.) Plaintiff attends church weekly, plays basketball twice a week, and does housework every day. (R. at 530.) Plaintiff bathes and changes his clothes daily and eats three meals a day, but does not cook. (*Id*.) He does not have a driver's license. (*Id*.)

Dr. Sisson reported that Plaintiff maintained appropriate eye contact and that his social presentation was within normal range. (*Id*.) While Dr. Sisson noted that Plaintiff is "an adequate historian/reporter," he reported that Plaintiff is "somewhat inconsistent in his report related to psychological symptoms (*e.g.*, references an anger problem but denies any symptoms; this is likely age-related)." (*Id*.) Dr. Sisson further noted that Plaintiff had normal syntax and vocabulary usage/recognition and does not need simplification of information. (*Id*.) At the examination, Plaintiff was oriented times three and coherent with no unusual or tangential/circumstantial thinking. (R. at 531.) Plaintiff's associations were normal. (*Id*.) Plaintiff reported he is a "little off on the educational side. Other stuff, fine. I can memorize plays." (*Id*.) Plaintiff denied and does not demonstrate any of the following: auditory or visual

hallucinatory involvement, paranoid ideation, psychosis, fears or phobias, post traumatic revivification experiences, nightmares, or obsessive compulsive behaviors.  (*Id*.)  Dr. Sisson reported that Plaintiff's insight and judgment are fair.  (*Id*.)

Dr. Sisson administered a Weschler Adult Intelligence Scale – Fourth Edition test ("WAIS-IV") (R. at 526, 531–35.)  Plaintiff earned an overall IQ the low average range (full-scale intelligence quotient ("FSIQ") of 85) and reflected mild impairment overall.  (R. at 532.)  Dr. Sisson, however, noted that Plaintiff's composite scores ranged from low to average, indicating that FSIQ is not a good summary measure of Plaintiff's intellectual skills.  (*Id*.)  Plaintiff's verbal skills and non-verbal/perceptual reasoning skills were both average.  (*Id*.)  Plaintiff's short-term attention/ working memory skills were in the low range, indicating moderate impairment, while his processing speed was low average, indicating mild impairment.  (*Id*.)

Dr. Sisson also administered a Wide Range Achievement Test IV ("WRAT-IV") to assess Plaintiff's skills in reading, spelling, and math.  (R. at 532–33.)  Plaintiff's reading skills, sentence comprehension, and spelling skills were in the low average, indicating mild impairment.  (R. at 533.)  His math skills were in the low range, indicating moderate impairment.  (*Id*.)

Dr. Sisson diagnosed Plaintiff with a learning disorder not otherwise specified ("NOS").  (*Id*.)  Dr. Sisson noted Plaintiff's scores in the WAIS-IV and WRAT-IV and noted that Plaintiff's school records "special education services in all core academic areas."  (R. at 533–34.)  Dr. Sisson based his diagnosis of a learning disorder NOS "on academic testing below average, and below intellectual expectations."  (R. at 534.)

Dr. Sisson rendered no diagnosis regarding Plaintiff's emotional symptoms. (*Id*.) Dr. Sisson reported no overt evidence of depression or anxiety. (*Id*.) Dr. Sisson noted that Plaintiff's vocational interests of janitorial work and culinary arts appear viable. (*Id*.) Dr. Sisson reported that Plaintiff would be able to manage moderate work stress, but that "under high levels of stress he may demonstrate a relapse of his reported anger difficulties." (R. at 534–35.) Dr. Sisson opined that Plaintiff would be able to complete both verbal and nonverbal tasks at an average level with no impairment expected; Plaintiff's work speed would be mildly impaired and that he would benefit from extended time to complete tasks or be allowed to work at his own pace. (R. at 535.) Because Plaintiff's short-term attention/working memory was moderately impaired, Dr. Sisson further opined that Plaintiff would be expected to maintain attention and concentration on a time-limited basis only and would need repetition of information, an environment with minimal distractions, redirection to task, and allowance for breaks to refocus. (*Id*.)

**B.      Jennifer Swain, Psy.D.**

On May 30, 2013, Jennifer Swain, Psy.D., a state-agency psychologist, reviewed Plaintiff's medical record. (R. at 551–68.) Dr. Swain indicated that Plaintiff suffered from moderate limitations in activities of daily living and in maintaining concentration, persistence, and pace. (R. at 561.) She also indicated that Plaintiff was mildly impaired in maintaining social functioning and had no episodes of decompensation. (R. at 561.) In her functional capacity assessment, Dr. Swain reported that Plaintiff, a senior in high school at the time of the evaluation, spends time with friends and enjoys being the varsity basketball manager. (R. at 619.) While Plaintiff's reading, writing, and math skills are at a twelfth-grade level, Dr. Swain indicated that Plaintiff's problem-solving skills, communication skills, independent living skills,

8

and employability skills are at "grade level." (*Id.*) Dr. Swain indicated that Plaintiff was an "adequate historian" but was "somewhat inconsistent reporting his symptoms." (*Id.*) Based on this and other findings from Dr. Sisson's examination, Dr. Swain went on to find as follows:

> Dr. Sisson is given partial weight as the claimant has worked in the lunchroom without difficulty. He is involved in sports. He can complete simple tasks. He reports that his concentration is improving. He reports he can memorize plays. He is a hard worker per school records. The statements made by the claimant are considered partially credible as he reports that he has an anger issue. The records show no difficulty with anger and he reports getting along with others.
>
> He should be able to work with normal work hours and normal breaks. He should be capable of understanding, remembering, and completing simple 1–2 step work tasks independently once learned. He may not be capable of reading complex instructions. He should be capable of relating to others on a superficial basis. He should be capable of handling the stress of routine work.

(*Id.*)

**C.     Karen Steiger, Ph.D.**

Karen Steiger, Ph.D., a state-agency psychologist, reviewed Plaintiff's medical record. (R. at 577–94.) Dr. Steiger found that Plaintiff was moderately limited in his ability to understand and remember and carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances, and in his ability to respond appropriately to changes in the work setting. (R. at 577–78.) Dr. Steiger also found that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures, ability to understand and remember and carry out very short and simple instructions, ability to sustain an ordinary routine without special supervision, ability to work in coordination with or in proximity to others without being distracted by them, and the ability to make simple work-related decisions. (*Id.*) She further found no evidence of any limitation in his ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms

9

and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 578.) Dr. Steiger noted that Plaintiff was an "adequate historian though somewhat inconsistent in his sx [symptoms] report." (R. at 579.) Based on the record, Dr. Steiger concluded that Plaintiff was "partially credible as testing shows math and reading skills would not prevent him from working." (*Id*.) She found that the record did not demonstrate that Plaintiff had a current anger problem or that he would need significant redirection to task. (*Id*.) She further concluded as follows:

> On the Function Form, there is no indication of problems with memory or completing tasks, concentration or getting along with others. He reports working in school. His duties are to clean up; however, there is no indication by him or his mother that he needs extra supervision. The claimant is capable of interacting with others in a work setting. He is capable of understanding, remembering, and following simple work instructions, 1–3 step instructions. He may not be capable of doing work that requires complex reading skills or more than simple math skills. He is capable of handling the stress of work within his ability level, given his LD [learning disability] diagnosis. He would be capable of sustaining concentration and attention for work tasks that do not require frequent and unexplained changes in job duties.

(*Id*.)

## IV. ADMINISTRATIVE DECISION

On August 11, 2015, the ALJ issued his decision. (R. at 34–47.) Step one of the sequential evaluation process[2] was not used in redetermining disability at age 18 (20 C.F.R. §

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant

416.987(b)). (R. at 35.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: scoliosis, coarctation and ventricular septal heart defect, bilateral extreme pes valgus foot deformities, status post tendon surgery and subtalar fusion, and a learning disorder. (R. at 36.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 37–40.) At step four, the ALJ assessed Plaintiff's mental RFC as follows:

> Psychologically, the claimant is able to get along with others adequately in a work setting. His problem-solving and decision making skills are adequate. He would be able to complete both verbal and non-verbal tasks at an average level. The claimant also would be able to complete basic reading and written tasks.

(R. at 40.) In reaching this determination, the ALJ accorded "great weight" to Dr. Steiger's opinion, stating that she is well-qualified through her training and experience and that, as a state-agency consultant, she is deemed to possess specific understanding of disability programs and evidentiary requirements. (R. at 40.) The ALJ found that Dr. Steiger's assessment is consistent with and supported by evidence in the record as a whole and that "evidence received into the record after the reconsideration determination concerning the claimant's mental status did not provide any credible or objectively supported new and material information that would alter the State Agency's findings concerning the claimant's mental limitations." (R. at 40–41.)

---

               perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

See 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ assigned "little weight," however, to Dr. Swain's opinion, finding that the opinion was "more limiting than what is supported objectively by the medical evidence." (R. at 41.) The ALJ further reasoned as follows:

> Moreover, while the claimant has some accommodations for his college courses, there is no substantial evidence that the claimant can only complete simple one-to-two step tasks and relate superficially with others. Instead, the claimant indicates that while he gets angry sometimes, he is able to control his anger. Additionally, the claimant has been able to engage in activities such as kickboxing classes, Tae Kwon Do, working as a cafeteria helper, and serving as a basketball manager.

(*Id*.)

The ALJ compared Dr. Sisson's opinion with the totality of the medical evidence, reasoning as follows:

> Dr. Sisson opined that the claimant is able to get along with others adequately in a work setting; his problem-solving and decision making skills are adequate; he would be able to complete both verbal and non-verbal tasks at an average level; and he would be able to complete basic reading and written tasks. These opinions are supported by Dr. Sisson's findings, as well as with the medical evidence of record. However, Dr. Sisson's opinion that the claimant "would be expected to maintain attention and concentration on a time-limited basis only and would need repetition of information, an environment with minimal distractions, redirection to task, and allowance for breaks" lends itself to multiple interpretations. As it was pointed out at the hearing, there is no clear indication of how many breaks the claimant would need and for how long. There is also no specific indication who long the claimant would be able to maintain attention and concentration. Furthermore, this opinion appears wholly inconsistent with the claimant's activities. He was released from his IEP his senior year in high school. He graduated from high school and currently attends college. While he is given some accommodation in school, the claimant has been able to engage in activities such as Tae Kwon Do, working as a cafeteria helper, and being a basketball manager. Moreover, the claimant was able to complete the psychological testing.

(*Id*.)

The ALJ found that Plaintiff's allegations of limitations to be not fully credible. (R. at 42–45.)

12

Relying on the VE's testimony, the ALJ determined that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 46–47.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 47.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances one contention of error. Plaintiff asserts that the ALJ's mental RFC is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ failed to incorporate the relevant mental limitations from Dr. Steiger's opinion into his RFC analysis. (SOE at 6–9; Reply at 2–4.) The Undersigned agrees, and concludes that the ALJ committed reversible error in failing to incorporate these limitations into his RFC.[3]

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

---

[3] This finding obviates the need to for in-depth analysis of Plaintiff's arguments regarding additional deficiencies in the ALJ's RFC assessment, including the weight given to other medical opinions. The Court, however, encourages the Commissioner to address these various contentions if the Court ultimately remands the case.

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, as discussed above, the ALJ gave "great weight" to Dr. Steiger's opinion, noting that she is well-qualified through her training and experience and that, as a state-agency consultant, she is deemed to possess specific understanding of disability programs and evidentiary requirements. (R. at 40.) The ALJ stated that Dr. Steiger's assessment "is consistent with and supported by evidence in the record as a whole" and that "evidence received into the record after the reconsideration determination concerning the claimant's mental status did not provide any credible or objectively supported new and material information that would alter the State Agency's findings concerning the claimant's mental limitations." (R. at 40–41.) The ALJ, therefore, appeared to adopt Dr. Steiger's opinion in total. Dr. Steiger specifically concluded, *inter alia*, that Plaintiff "would be capable of sustaining concentration and attention for work tasks that do not require frequent and unexplained changes in job duties." (R. at 579.)

The ALJ's mental RFC, however, does not address this limitation. (R. at 40.) Instead, the ALJ simply concluded that Plaintiff is able to get along with others in a work setting, that Plaintiff had adequate problem-solving and decision making skills, and that Plaintiff "would be able to complete both verbal and non-verbal tasks at an average level. The claimant also would

15

be able to complete basic reading and written tasks." (*Id*.) Nowhere in his opinion does the ALJ explain why he failed to incorporate Dr. Steiger's limitations even though he gave her opinion great weight. The ALJ's failure to do so renders this Court unable to assess the ALJ's reasoning and understand why he did not incorporate Dr. Steiger's limitations in his RFC. *See* S.S.R. 96–8p, 1996 WL 374184, at *6–7; *Reed v. Comm'r of Soc. Sec*., No. 1:16-CV-572, 2017 WL 1531872, at *6 (W.D. Mich. Apr. 28, 2017) (remanding case where, *inter alia*, "[t]he ALJ did not explain why he did not adopt this portion of the opinion [doctor's opinion as to the plaintiff's limitations] despite giving it great weight").

The Commissioner concedes that the ALJ failed to include in the RFC determination certain limitations identified in Dr. Steiger's opinion. (Opposition at 5.) The Commissioner, however, contends that any failure to include these limitations amounts to harmless error because the VE's testimony that Plaintiff could work as a sorter, order clerk, or inspector is consistent with Dr. Steiger's opinion. (*Id*. at 5–8.) The Commissioner specifically argues that the VE testified that "these jobs were unskilled and simple in their instructions and tasks (Tr. 79), which accounts for . . . the third limitation [in Dr. Steiger's opinion regarding Plaintiff's ability to sustain concentration and attention for work tasks that do not require frequent and unexplained changes in job duties]." (*Id*. at 6.) The Commissioner therefore takes the position that these unskilled jobs adequately accounted for the limitations in Dr. Steiger's opinion because these jobs include only "simple changes" in the work setting and suggests that these jobs' duties "do not change frequently." (*Id*. at 6–7 (citations omitted).)

The Commissioner's argument is not well taken. The Court is not persuaded that "simple changes" account for a limitation of occasional changes in job duties, which is defined as "occurring from very little up to one-third of the time, and would generally total no more than

16

about 2 hours of an 8-hour workday." S.S.R. 96-6p. The Court further agrees with Plaintiff that "simple changes" in these jobs' duties do not adequately accommodate a limitation of no "unexplained changes" in job duties. In short, the ALJ, after giving great weight to Dr. Steiger's opinion, failed to include at least one limitation from that opinion and did not explain this omission. The ALJ's failure to include such limitations is not harmless error. Based on this record, the Court cannot evaluate the ALJ's reasoning and accepting the Commissioner's attempt to explain this omission would result in the Court "engaging in *post hoc* rationalization, which is prohibited." *Miller v. Comm'r of Soc. Sec.*, No. 1:13–CV–1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014) (remanding action where, *inter alia*, "the Court is unable to ascertain the ALJ's intent" because the ALJ "did not discuss her decision to omit the limitation" contained in a medical opinion to which the ALJ attributed "full weight"); *see also* S.S.R. 96–8p; *Bookout v. Comm'r of Soc. Sec.*, No. 3:13-cv-463, 2014 WL 4450346, at *7 (E.D. Tenn. Sept. 10, 2014) (remanding case where, *inter alia*, "the ALJ adopted Dr. Fletcher's opinion in its entirety" but "ignored" certain limitations and stating that the ALJ "had a duty to explain" why she declined to adopt the limitations).

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: December 21, 2017   s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE